KENDALL BRILL & KELLY LLP
Nary Kim (293639)
  nkim@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

FLASTER GREENBERG PC
Jordan LaVine (*pro hac vice* application forthcoming)
  Jordan.LaVine@flastergreenberg.com
1717 Arch Street, Suite 3300
Philadelphia, PA 19103
Telephone: 215.279.9389
Facsimile: 215.279.9394

Attorneys for Defendants TGL GOLF
HOLDINGS, LLC; and LA GOLF CLUB, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA GOLF PARTNERS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TGL GOLF HOLDINGS, LLC, a Delaware limited liability company; LA GOLF CLUB, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:25-CV-00816-WLH-JDE<br><br>**DECLARATION OF NARY KIM IN SUPPORT OF MOTION TO DISMISS OR STAY**<br><br>Hearing:  May 30, 2025<br>Time:  1:30 p.m.<br>Judge:  Wesley L. Hsu<br>Courtroom:  9B<br><br>Action Filed:  January 30, 2025<br>Trial Date:  None |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

604450801.1

Case No. 2:25-CV-00816-WLH-JDE

DECLARATION OF NARY KIM

## DECLARATION OF NARY KIM

I, Nary Kim, declare as follows:

1.     I am a partner at Kendall Brill & Kelly LLP and counsel of record for Defendants TGL Golf Holdings, LLC and LA Golf Club, Inc. in this action. Except where otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     This declaration is submitted in support of Defendants' Motion to Dismiss or Stay the Complaint Pursuant to Federal Comity and the First-To-File Rule.

3.     On January 6, 2025, TGL Golf Holdings, LLC (one of the two Defendants in this action) filed a complaint for Declaratory Relief against LA Golf Partners, LLC (the Plaintiff in this action) in the United States District Court for District of Delaware (the "**Delaware Action**").

4.     On January 30, 2025, LA Golf Partners, LLC filed a motion to dismiss and/or transfer venue of the Delaware Action to this Court (the "**Transfer Motion**"). LA Golf Partners, LLC filed its Complaint in this action that same day.

5.     The Transfer Motion has been fully briefed by the parties, and is awaiting a hearing date to be assigned by the District Court for the District of Delaware. True and correct copies of the opening brief, response brief, and reply brief are attached to this declaration as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3**, respectively.

6.     On March 19, 2025, I met-and-conferred with John Ulin, Plaintiff's counsel, via Zoom. During the meet-and-confer, I previewed this present motion by Defendants to move to stay or dismiss this action, which would be Defendants' response to the Complaint in this case. I explained that Defendants would argue in this motion that this second-filed action should be stayed or dismissed pending the outcome of the Transfer Motion in the earlier-filed Delaware Action, since the outcome of the Transfer Motion will determine the forum for the parties' dispute.

7.     During the meet-and-confer, I asked counsel for Plaintiff whether he

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

604450801.1                                   2                    Case No. 2:25-CV-00816-WLH-JDE
DECLARATION OF NARY KIM

would consider simply entering into another stipulation, in lieu of requiring Defendants to file this motion on the ground that the Transfer Motion in the Delaware Action will determine the threshold issue of where this dispute should be litigated: this Court or the District Court for the District of Delaware.

8.     Counsel for Plaintiff agreed that it would make sense to so stipulate, rather than requiring motion practice in this Court that would potentially be mooted by the outcome of the Transfer Motion. We thus proceeded to discuss the terms of the Second Joint Stipulation, a final version of which was filed with this Court on March 21, 2025.

9.     In particular, counsel for the parties discussed and agreed that, rather than require Defendants to file a motion to dismiss or stay now, it would be more sensible and efficient for the parties to stipulate to extend the deadline for Defendants to respond to the Complaint pending the outcome of the Transfer Motion, including to prevent unnecessary filings and conserve judicial resources. A true and correct copy of the e-mail exchange I had with Plaintiffs' counsel before and after the meet-and-confer is attached as **Exhibit 4**.

10.     As reflected in the as-filed Second Joint Stipulation (Dkt. No. 18), the parties anticipate at this time that the District Court for District of Delaware will render its decision on the Transfer Motion within the next 60 days.

The foregoing is within my personal knowledge and if called as a witness I could testify competently thereto. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 26th day of March, 2025, at Los Angeles, California.

Nary Kim

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

604450801.1                3                Case No. 2:25-CV-00816-WLH-JDE
DECLARATION OF NARY KIM

# **<u>EXHIBIT 1</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TGL GOLF HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-011 (JLH) |
| | ) | |
| LA GOLF PARTNERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT LA GOLF PARTNERS, LLC'S MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE

Pursuant to 28 U.S.C. §§ 2201 and 1404(a) and Federal Rule of Civil Procedure 12(b)(1), Defendant LA Golf Partners, LLC respectfully moves this Court to dismiss this action or, alternatively, transfer this action to the United States District Court for the Central District of California. The grounds for the motion are set forth in the Opening Brief filed herewith.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
began@morrisnichols.com
esteingraber@morrisnichols.com

OF COUNSEL:

John C. Ulin
Benjamin W. Clements
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, CA 90067
(310) 553-4441

*Attorneys for Defendant LA Golf Partners, LLC*

January 30, 2025

EXHIBIT 1
Page 4

# **RULE 7.1.1 CERTIFICATE**

Pursuant to D. Del. LR 7.1.1, counsel for Defendant LA Golf Partners, LLC certifies that counsel for the parties, including Delaware counsel, discussed defendant's motion to transfer venue and the relief sought, and that the parties have been unable to reach agreement.

*/s/ Brian P. Egan*
Brian P. Egan (#6227)

EXHIBIT 1
Page 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TGL GOLF HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 25-011 (JLH) |
| | ) |
| LA GOLF PARTNERS, LLC, | ) |
| | ) |
| Defendant. | ) |

**[PROPOSED] ORDER GRANTING DEFENDANT LA GOLF PARTNERS, LLC'S
MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE**

This matter is before the Court on LA Golf Partners, LLC's Motion to Dismiss or, Alternatively, Transfer Venue to the Central District of California ("Motion"). For good cause shown, the Motion is GRANTED, and it is HEREBY ORDERED that:

The Clerk of the Court is directed to dismiss this action and close this case.

IT IS SO ORDERED this _____ day of _____, 2025.

_____
The Honorable Jennifer L. Hall
United States District Court

EXHIBIT 1
Page 6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 30, 2025, upon the following in the manner indicated:

Damien Nicholas Tancred, Esquire                      *VIA ELECTRONIC MAIL*
FLASTER GREENBERG P.C.
221 W. 10th Street, 4th Floor
Wilmington, DE 19801
*Attorneys for Plaintiff*

Eric R. Clendening, Esquire                         *VIA ELECTRONIC MAIL*
Jordan A. LaVine, Esquire
Laura Lipschutz, Esquire
FLASTER GREENBERG P.C.
100 Front Street, Suite 100
Conshokocken, PA 19428
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)

EXHIBIT 1
Page 7

# **EXHIBIT 2**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TGL GOLF HOLDINGS, LLC, | |
| Plaintiff, | Case No.: 1:25-cv-00011-UNA |
| v. | |
| LA GOLF PARTNERS, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### TGL GOLF HOLDINGS, LLC'S RESPONSE BRIEF IN OPPOSITION TO LA GOLF PARTNERS, LLC'S MOTION TO DISMISS OR, ALTERNATIVELY, <u>TRANSFER VENUE</u>

Damien Nicholas Tancredi (DE No. 5395)
FLASTER GREENBERG P.C.
221 W. 10th Street, 4th Floor
Wilmington, DE 19801
Telephone: (302) 351-1910
Facsimile: (302) 351-1919
Damien.tancredi@flastergreenberg.com

Jordan A. LaVine (*admitted pro hac vice*)
Eric Clendening (*admitted pro hac vice*)
Laura Lipschutz (*admitted pro hac vice*)
FLASTER GREENBERG P.C.
1717 Arch Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 279-9389
Facsimile: (215) 279-9394
Jordan.lavine@flastergreenberg.com
Eric.clendening@flastergreenberg.com
Laura.lipschutz@flastergreenberg.com

11579175 v5

EXHIBIT 2
Page 8

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.    BACKGROUND FACTS .................................................................................. 2

     A.    TGL and LAGP...................................................................................... 2

     B.    The Events Leading To This Dispute ................................................... 3

III.   ARGUMENT .................................................................................................... 4

     A.    Dismissal Is Not Appropriate................................................................ 4

           1.   TGL's Declaratory Judgment Action is Proper............................ 5

           2.   LAGP Belatedly Filed the California Action to Create Duplicative Litigation.................................................................... 7

           3.   LAGP's "Alternative Remedies" Can Be Addressed In This Action ............. 8

           4.   This Declaratory Judgment Action Can Resolve the Parties' Dispute............ 9

           5.   Delaware Is a Convenient Forum................................................. 9

           6.   The Public Interest Favors Resolution In This Court.................... 10

     B.    This Action Should Proceed in Delaware Rather Than Being Transferred to California ............................................................ 11

           1.   TGL's Choice of Forum Is Paramount.......................................... 12

           2.   LAGP's Forum Preference Is Afforded Less Weight .................... 14

           3.   The "Whether the Claim Arose Elsewhere" Interest Is Neutral .................... 14

           4.   The "Convenience of the Parties" Interest Is Neutral .................... 15

           5.   The "Convenience of the Witnesses" Interest Is Neutral .............. 17

           6.   The "Location of Books and Records" Interest is Neutral............. 17

           7.   The "Practical Considerations" Interest is Neutral ....................... 18

           8.   The "Court Congestion" Interest At Best Slightly Favors Transfer .............. 18

           9.   The "Local Interest" Factor Is Neutral.......................................... 19

           10.  The "Public Policies of the Fora" Interest is Neutral.................... 19

           11.  "Familiarity of the Trial Judge With the Applicable State Law" is Inapplicable................................................................ 20

IV.   CONCLUSION................................................................................................ 20

ii

EXHIBIT 2

Page 9

# TABLE OF AUTHORITIES

**Cases**

*American Axle & Mfg. v. Neapco Holdings LLC*, 2016 U.S. Dist. 198332
(D. Del. Sep. 23, 2016) ................................................................... 9, 10, 12

*Blackbird Tech LLC v. Cloudfare, Inc.*, 2017 U.S. Dist. LEXIS 167860
(D. Del. Oct. 11, 2017) ................................................................. 12, 13, 18

*Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883
(D. Del. May 4, 2020)...................................................................*Passim*

*Blackbird Tech. LLC v. TuffStuff Fitness Int'l, Inc.*, 2017 U.S. Dist. LEXIS 63752
(D. Del. Apr. 27, 2017). ......................................................................... 19

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445
(D. Del. 2003) ......................................................................................... 5

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 2013 U.S. Dist. LEXIS 30205
(D. Del. Mar. 6, 2013)............................................................................ 16

*Cisco Sys. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 U.S. Dist. LEXIS 205905
(D. Del. Nov. 14, 2022) .......................................................................... 12

*David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 U.S. Dist. LEXIS 163785
(D. Del. Sep. 25, 2019) ...............................................................*Passim*

*DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th at 205 (2d Cir. 2021)......................... 9

*Drugstore-Direct, Inc. v. Cartier Division of Richemont North America*,
350 F. Supp. 2d 260 (E.D. Pa. 2004) ......................................................... 7

*Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012) ................. 14, 15

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)....................................*Passim*

*MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218 (D. Del. 2017)............................................. 16

*Memory Integrity, LLC v. Intel Corp.* 2015 U.S. Dist. LEXIS 17813
(D. Del. Feb. 13, 2015). .......................................................................... 13

*Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463 (D. Del. 2013), .......................... 13

*National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*,
1997 U.S. Dist. LEXIS 16734 (E.D. Pa. Oct. 29, 1997)........................................ 7

*Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396 (D. Del. 2013) ........................................... 5, 6, 7

*One World Botanicals v. Gulf Coast Nutritionals*, 987 F. Supp. 317 (D.N.J. 1997),.................... 13

*Pennsylvania Mfrs. Indem. Co. v. Six Continents Hotels, Inc.*,
2023 U.S. Dist. LEXIS 197478  (D. Del. Nov. 2, 2023) .........................................11

iii

EXHIBIT 2
Page 10

*Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481 (D.N.J. 1998) ....................................... 19

*Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 143 (3d Cir. 2014).............................................. 4, 8, 9

*Samsara Inc. v. Motive Techs., Inc.*, 2024 U.S. Dist. LEXIS 144602
    (D. Del. Aug. 14, 2024) ........................................................................................................ 20

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ..........................................................11

*Smith Int'l, Inc. v. Baker Hughes, Inc.*, 2016 U.S. Dist. LEXIS 105481 (D. Del. Aug. 10, 2016)
    *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 144698
    (D. Del. Oct. 19, 2016) ..................................................................................................... 10, 18

*Textron Innovations, Inc. v. Toro Co.*, 2005 U.S. Dist. LEXIS 23561 (D. Del. Oct. 14, 2005).... 19

*TSMC Tech., Inc. v. Zond*, LLC, 2014 U.S. Dist. LEXIS 175201 (D. Del. Dec. 19, 2014) *report
    and recommendation adopted by* 2015 U.S. Dist. LEXIS 8411
    (D. Del. Jan. 26, 2015).......................................................................................................... 5, 16

*VLSI Tech. LLC v. Intel Corp.*, 2018 U.S. Dist. LEXIS 184383
    (D. Del. Oct. 29, 2018) ................................................................................................... 15, 17, 18

*Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, 2020 U.S. Dist. LEXIS 9944
    (D. Del. Jan. 21, 2020), ...................................................................................................... 14, 15

*Zazzali v. Swenson*, 852 F. Supp. 2d 438 (D. Del. 2012) ....................................................... 10, 14

iv

EXHIBIT 2
Page 11

# I.   INTRODUCTION

The creation of golfers Tiger Woods and Rory McIlroy, and sports executive Mike McCarley, TGL Golf Holdings, LLC ("TGL") provides a virtual, interactive golf league featuring team-based competitions in Florida, broadcast nationwide in primetime on ESPN. The league includes 24 PGA players with four players assigned to six different teams. Each TGL match features two teams (of three players each) competing in a two-hour golf competition. TGL delivers a fresh approach to golf with a focus on technology, innovation, and fan engagement.

On June 7, 2023, TGL announced the first of its six virtual teams, Los Angeles Golf Club ("LAGC"), owned by Alexis Ohanian, Serena Williams and Venus Williams, and began using the trademark extensively. Despite its name, LAGC does not have a physical presence in Los Angeles.

More than four months later, on October 18, 2023, LA Golf Partners, LLC ("LAGP") sent a letter to TGL and LAGC, alleging infringement of LAGP's trademarks, but proposing a partnership with TGL rather than demanding that TGL stop using LAGC trademarks. From the outset, TGL declined the offer to partner with LAGP, and TGL ceased communicating with LAGP altogether after a video call between the parties' counsel on April 26, 2024.

Eight months later, on January 3, 2025, a new lawyer for LAGP sent a demand letter to TGL's counsel. With the launch of TGL imminent on January 7, 2025, TGL initiated this case to finally resolve the parties' rights. Twenty-five days later, LAGP filed a trademark infringement lawsuit in the Central District of California and simultaneously filed this motion.

LAGP chose to incorporate in Delaware, establishing this court's jurisdiction over LAGP and a strong presumption that venue is proper in Delaware. Solely to circumvent this presumption, LAGP filed the California action, but LAGP cannot meet its heavy burden to justify dismissal or transfer, relying on a very limited set of facts – location of its offices, employees, documents, and operations in California – all of which are insufficient to shift the balance of interests in its favor.

1

EXHIBIT 2
Page 12

This case is the first-filed action, properly initiated in the parties' state of incorporation, and should therefore proceed.

## II.   BACKGROUND FACTS

### A.   <u>TGL and LAGP</u>

TGL, headquartered in Winter Park, Florida, was incorporated in Delaware on April 18, 2022. Declaration of Chris Murvin dated February 13, 2025 ("Murvin Decl.") at ¶ 6. TGL provides an innovative golf league in partnership with the PGA Tour fusing advanced technology and live action in prime time. Compl. at ¶ 20. The inaugural season includes a total of 24 players with four players assigned to each of the six teams: **Los Angeles Golf Club**, owned by Alexis Ohanian, Serena Williams and Venus Williams, **Atlanta Drive GC**, owned by Arthur M. Blank, **Boston Common Golf**, owned by Fenway Sports Group, **New York Golf Club**, owned by Steven Cohen, **The Bay Golf Club**, owned by Marc Lasry's Avenue Sports Fund and Stephen Curry, and **Jupiter Links Golf Club**, owned by TGR Ventures and David Blitzer. Murvin Decl. at ¶ 9. All TGL matches are played in a purpose-built venue called the SoFi Center in Palm Beach Gardens, Florida, which combines a data-rich virtual course with a first-of-its-kind short game complex creating a unique experience for the fans in the stands and watching around the world. *Id*. at ¶ 8. The season is broadcast live on ESPN and ESPN+. *Id*. at ¶ 7.

The Los Angeles team's name is the subject of this dispute, but the team's connection to Los Angeles is in name only. The LA team's players are not Los Angeles residents, its owners reside in Florida, and its chief executive resides in the San Francico area. *Id*. at ¶¶ 10-11.

LAGP was incorporated in Delaware on January 5, 2018.[1] LAGP manufactures golf equipment such as putters and golf club shafts, distributing its products in "multiple continents."

---

[1] *See* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited February 10, 2025).

2

EXHIBIT 2
Page 13

Mot. at 3. LAGP asserts it "owns applications and registrations for the LA Golf marks in the United States, the European Union, and several other countries." *Id.*

### B. <u>The Events Leading To This Dispute</u>

In advance of the league launch, TGL first announced the LAGC team on June 8, 2023, and filed trademark applications – initially through the LA team on June 7, 2023, and then in its own name on November 14, 2023. Compl. at ¶ 28, 30. Months after TGL announced LAGC and began using its trademark, LAGP sent a letter to TGL and LAGC, on October 18, 2023, stating:

> It has come to our client's attention that LA Golf Club, Inc. … currently uses and intends to expand the use of trademarks that infringe LA Golf's name and marks. This infringing use is already causing confusion and damage ….
> * * *
> LA Golf [LAGP] remains open to potential royalty and partnership opportunities between the various entities involved …. [O]ur client remains hopeful that the parties can find a mutually acceptable resolution of this matter, but has made it clear that it intends to diligently and vigorously protect its name and its brands from the damage being done. LA Golf therefore requests that Golf Club and/or TGL respond to this letter in writing by October 30, 2023, and engage in good faith negotiations to end the confusion and resolve this matter.

10/18/23 Letter at 1 and 3 (Compl., Ex. E). After receipt of the letter, the parties' counsel had 2-3 short conversations about LAGP's concerns and proposal – the last occurring on April 26, 2024. Compl. at ¶41. During those discussions, TGL made clear that it was not interested in a partnership or royalty relationship with LAGP and disputed LAGP's infringement allegations. Compl. at ¶41. The parties never executed a standstill or tolling agreement. Declaration of Jordan LaVine dated February 13, 2025 ("LaVine Decl.") at ¶ 5.

After the April 26, 2024 conversation and through January 2, 2025, there was no communication between counsel or the parties. LaVine Decl. at ¶ 6; Murvin Decl. at ¶ 13. On the evening of Friday, January 3, 2025, LAGP's counsel sent a letter to TGL's counsel asking TGL to confirm "prior to [Tuesday] January 7" that it will "cease" using the allegedly infringing marks

EXHIBIT 2
Page 14

and take "necessary measures to dispel actual and potential confusion" from use of the trademarks.

Letter at 1-2 (Compl., Ex. F). The letter closes:

> We look forward to hearing from your office regarding confirmation of your client's willingness to comply with the demands outlined above and to cease their unauthorized use of LA Golf's trademarks.

Letter at 4 (Compl., Ex. F). On January 6, 2025, TGL filed a Complaint for Declaratory Judgment in the District Court of Delaware ("this Action"). On January 30, 2025, LAGP filed both this Motion and a separate trademark infringement suit in the Central District of California ("the California Action"). Clemens Decl., Ex. A.

## III. ARGUMENT

### A. Dismissal Is Not Appropriate

The "mere existence" of another related action does not require this Court to decline to exercise jurisdiction over this first-filed declaratory judgment action. *See, e.g.*, *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 143 (3d Cir. 2014). Courts in the Third Circuit weigh the following factors when deciding whether to exercise jurisdiction:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> *  *  *
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata.

*Reifer*, 751 F.3d at 146.[2]

This Court's analysis also requires consideration of the first-filed rule. This rule "gives precedence to a first-filed declaratory judgment action over a later-filed infringement action when

---

[2] The parties agree that the 5th factor – "a general policy of restraint when the same issues are pending in a state court" is not applicable. LAGP re-ordered these factors when addressing them in its brief. Therefore, to assist the Court, TGL's sub-sections track LAGP's brief.

EXHIBIT 2
Page 15

the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding….” *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396 (D. Del. 2013) (ellipsis in original) (internal quotes and citations omitted).[3] When applicable, the rule “counsels that a later-filed action involving the same controversy should be dismissed, transferred, or otherwise enjoined in favor of the first-filed action.” *TSMC Tech., Inc. v. Zond, LLC*, 2014 U.S. Dist. LEXIS 175201 at *11 (D. Del. Dec. 19, 2014) *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 8411 (D. Del. Jan. 26, 2015).[4] Here, this Action is the first-filed and involves the same controversy as the later filed California Action. There is no “sound reason that would make it unjust or inefficient to continue the first-filed action.” *TSMC Tech., Inc.*, 2014 U.S. Dist. LEXIS 175201 at *59 (citation omitted).[5]

### 1. TGL's Declaratory Judgment Action is Proper

LAGP characterizes TGL's actions in filing this declaratory judgment action as “procedural fencing in a race to the courthouse.” Mot. at 8. LAGP's argument, however, is based on the objectively false premise that TGL and LAGP were actively negotiating a settlement or resolution of their disagreement when TGL filed this Action. The chronology and exchanges between the parties prove the falsity of this claim:

- On June 7, 2023, TGL (through its licensee LAGC) files trademark applications for the “LAGC” trademark. Compl. at ¶ 30.

- On June 8, 2023, TGL announces the name of its Los Angeles team. Compl. at ¶ 28.

---

[3] LAGP does not address the first-filed rule until page 13 of its brief when arguing that TGL's choice of forum “deserves minimal weight” in its transfer analysis.

[4] *See Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445 (D. Del. 2003) (applying first-filed rule in trademark case).

[5] Although there are exceptions to the application of the first-filed rule (*e.g.*, bad faith or anticipatory filing, forum shopping, progression of second-filed case), none apply here. As explained in section A.1, TGL did not act in bad faith or file an anticipatory action. There is no conflict in law between Delaware and California on these infringement issues so no forum shopping, and the second-filed action has not proceeded further than this Action. “Only in rare or extraordinary circumstances” will the first-filed action not proceed. *Chase Manhattan*, 265 F. Supp. 2d at 448. *See also Nexans*, 966 F. Supp. 2d at 403-04 (citation omitted).

- In an October 18, 2023 letter to TGL and LAGC, LAGP alleges infringement, but suggests a partnership between the parties. 10/18/23 Letter at 3 (Compl. at Ex. E).[6]

- Following the October 18, 2023 letter, the parties' counsel had 2-3 short conversations to address LAGP's concerns; the last occurred on April 26, 2024. Compl. at ¶41. During those discussions, TGL made clear that it was not interested in a partnership or royalty relationship with LAGP and disputed LAGP's infringement allegations. Compl. at ¶41.

- From April 27, 2024 through January 2, 2025, there was no communication between counsel or the parties. LaVine Decl. at ¶ 6; Mulvin Decl. at ¶ 13. The parties never executed any standstill or tolling agreement. LaVine Decl. at ¶ 5.

- Even though no prior cease and desist demand was ever made, on January 3, 2025, new counsel for LAGP's sent a "final demand to cease and desist" letter to TGL's counsel, asking TGL to confirm "prior to January 7" that it will "cease" using the allegedly infringing names and logo and take "necessary measures to dispel actual and potential confusion" from use of the trademarks in order to "put an end to the ongoing infringement." Letter at 1-2 (Compl., Ex. F).

- TGL filed this Action on January 6, 2025. (Compl.)

This Court has explained that "a suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of <u>specific, concrete indications that a suit by the defendant was imminent</u>." *Nexans Inc.*, 966 F. Supp. 2d at 404 (emphasis added and citation omitted) (concluding action filed 19 days after expiration of standstill agreement was not anticipatory and no bad faith despite email exchange after expiration of agreement). LAGP knew about TGL's trademark in <u>June 2023</u>. More than <u>18 months later</u>, on the eve of TGL's first televised competition, LAGP sent a letter asking TGL to confirm that it would stop using the marks. That is not a threat of "imminent" litigation.[7]

---

[6] In that letter, LAGP refers to the launch of TGL's virtual golf competition in January 2024. 10/18/23 Letter at 2 (Compl., Ex. E). That launch was delayed due to storm damage to TGL's Florida facility. Compl. at ¶ 21.

[7] LAGP notes that TGL "acknowledges" that it "threatened to bring a lawsuit." Mot. at 9. A characterization of a general threat is not sufficient to establish "procedural fencing." LAGP also relies primarily on non-binding, factually distinguishable out-of-state cases. Here, unlike the cases cited by LAGP, there were no on-going negotiations between the parties, no tolling or standstill agreement, no clear indication that a lawsuit was imminent, and LAGP – after receipt of TGL's suit – waited more than three weeks to file the California Action, filing the same day its response to this Action was due.

6

EXHIBIT 2
Page 17

TGL acted appropriately in filing a declaratory judgment action – the exact type of action needed to address the parties' dispute – in the parties' place of incorporation. *See Nexans Inc.*, 966 F. Supp. 2d at 404 ("The Declaratory Judgment Act specifically allows declaratory judgment actions for parties facing accusations of patent infringement to 'clear the air' regarding their accused products.") (citation omitted). TGL did not race to the courthouse. This was an 18-month long dispute. LAGP was the only party that rushed to court in the Central District of California, filing a parallel action to strengthen its motion to dismiss on the same day its response to the Complaint in this Action was due. TGL did not preempt LAGP; TGL properly filed its declaratory judgment action.

### 2. LAGP Belatedly Filed the California Action to Create Duplicative Litigation

LAGP filed the California Action to tip this factor in its favor. The claims asserted in that action could have, and should have, been asserted as counterclaims in this Action.

LAGP incorrectly relies on *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 U.S. Dist. LEXIS 16734 (E.D. Pa. Oct. 29, 1997), and *Drugstore-Direct, Inc. v. Cartier Division of Richemont North America*, 350 F. Supp. 2d 260 (E.D. Pa. 2004). In *National Foam*, the plaintiff did not name the original patent owner as a party to its declaratory judgment action and there was blatant forum shopping. Here, LAGP is the proper defendant and there is no evidence of forum shopping because the laws in Delaware and California do not conflict. Similarly, in *Drugstore-Direct*, the plaintiff "concede[d] that having two actions on the same subject matter pending in two different courts does not serve judicial economy" and the court ultimately dismissed the plaintiff's action in favor of a suit filed 6 days later in the Southern District of New York because "there was no evidence" the Pennsylvania court had personal jurisdiction over the additional parties. *Drugstore Direct, Inc.*, 350 F. Supp. 2d at 624. In *Drugstore-Direct*, the dismissal of the plaintiff's action was the only option to prevent the blatant "waste of judicial

<div align="center">7</div>

EXHIBIT 2
Page 18

resources" if both actions proceeded simultaneously. Here, this Court has personal jurisdiction over the parties even if LAGC is added as a party.[8]

TGL acknowledges that "conserving judicial resources" and ensuring a "comprehensive resolution of litigation" are key factors in the district court's discretion to decline jurisdiction over a declaratory judgment action. This court can address these concerns by allowing this Action to proceed while staying or dismissing LAGP's duplicative case.

### 3. LAGP's "Alternative Remedies" Can Be Addressed In This Action

This factor considers "the availability and relative convenience of other remedies." *Reifer*, 751 F.3d at 146. LAGP argues that TGL's declaratory judgment action serves no purpose because it filed a "coercive action" (*i.e.*, suit for damages or injunction) and that LAGP's claims are "the more efficient vehicle for resolving the dispute." Mot. at 10. LAGP relies on out of state, factually dissimilar cases to support its position. Here, when TGL commenced this action, LAGP had not filed any action regarding the alleged infringement. There was no coercive action. As a result, when TGL filed its declaratory judgment action – an action specifically used to declare a party's rights – it was appropriate. LAGP's separate filing, weeks later, does not tip this factor in its favor. In its October letter, LAGP accused TGL of infringing activity. 10/18/23 Letter at 1 (Compl., Ex. E). Despite knowledge of the alleged activity no later than October 2023 (and likely earlier), LAGP waited over a year to bring a coercive action (the California Action) on the same day its response in this Action was due. This Court can address LAGP's claims fully and efficiently in this Action.[9]

---

[8] In its California complaint, LAGP alleges that LAGC "is a corporation organized under the laws of the state of Delaware, with its principal place of business at 667 W. Indiantown Road, Suite 50-420, Jupiter, Florida 33458." Compl. at ¶ 6. LAGC does not have physical offices in Los Angeles. Murvin Decl. at ¶ 12.

[9] LAGP argues that "TGL is the alleged infringer, not the party experiencing actionable harm." Mot. at 10. That is wrong, especially considering TGL's petition to cancel LAGC's trademark registration. Compl. at Count VI.

### 4. This Declaratory Judgment Action Can Resolve the Parties' Dispute

This factor addresses the "likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy." *Reifer*, 751 F.3d at 146. As LAGP notes, *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.* states:

> two general types of situations which may make it unlikely that a declaration will prevent further litigation [are]: (1) when one or more persons have not been joined, but have an interest in the outcome of the action, and (2) when one or more issues have not been raised, but are a part of the controversy or uncertainty.

10 F.4th at 205-06 (2d Cir. 2021) (citation omitted). Attempting to track these factors, LAGP presents two reasons why this declaration will not resolve the parties' complete dispute: (1) LAGC has an "interest in the outcome of the litigation" and is a party to the California Action, but not this Action; and (2) the California Action asserts violations of California's Unfair Competition Law, but this Action does not. Mot. at 11. Both issues are easily cured. LAGP can add LAGC as a party in this Action and assert counterclaims raising violations of California's Unfair Competition Law. Nothing precludes LAGP from asserting its claims as a defendant in an action as opposed to the plaintiff. With this curative measure, this Action will fully resolve the parties' dispute.

### 5. Delaware Is a Convenient Forum

There is no dispute that TGL and LAGP are "organized under the laws of Delaware." Compl. at ¶¶ 53-54, Mot. 11. Contrary to LAGP's assertions, that fact is significant in the court's analysis. LAGP chose to incorporate in Delaware, exposing it to personal jurisdiction in the state, and "avail[ing] itself of the benefits and consequences of [its] laws." *American Axle & Mfg. v. Neapco Holdings LLC*, 2016 U.S. Dist. 198332 at *8 (D. Del. Sep. 23, 2016).

LAGP alleges its witnesses and documents are in California, but that is insufficient to tip this factor in its favor, and in fact, LAGP expressed to TGL its willingness to litigate anywhere:

> Simply put, your clients are not going to be using our client's name and brand any longer, and this office has been retained to defend the brand and to take action to

<div align="center">9</div>

EXHIBIT 2
Page 20

> eliminate threats of infringement of that brand in every jurisdiction around the globe.
>
>       * * *
>
> In light of these business plans, LA Golf has already shown that its willingness to protect and defend its marks **in the United States and throughout the world**, and LA Golf **is prepared to continue to spend what it takes in each of these jurisdictions** to protect its rights – for as long as it takes.

1/3/25 Letter at 1, 3 (Compl., Ex. F) (emphasis added). Contrary to LAGP's assertion, TGL does not have a "team located in Los Angeles." Mot. at 11. TGL is a virtual golf league with players competing only in its Florida facility. Compl. at ¶¶ 2, 19.

LAGP also suggests that TGL selected Delaware because TGL's counsel has an office in Delaware. Although that is not the reason TGL selected Delaware, it is a valid reason. *See David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 U.S. Dist. LEXIS 163785 at *7 (D. Del. Sep. 25, 2019) (noting that party "chose Delaware for legitimate reasons: … it was convenient to Penn's outside trademark counsel, whose principal office is located in Philadelphia.").

TGL choice of Delaware was logical because both parties are incorporated in Delaware. *American Axle & Mfg.*, 2016 U.S. Dist. 198332 at *7 ("It is well-settled that a party's state of incorporation is a traditional and legitimate venue in which to bring suit.") (citation omitted); *Smith Int'l, Inc. v. Baker Hughes, Inc.*, 2016 U.S. Dist. LEXIS 105481 at *8 (D. Del. Aug. 10, 2016) ("A party's state of incorporation is a traditional and legitimate venue.") (citations omitted), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 144698 (D. Del. Oct. 19, 2016). The next logical location is Florida, where TGL is headquartered (Compl. at ¶ 53), but a Florida court would likely not have personal jurisdiction over LAGP. At best, this factor is neutral. *See* B.6 (below).

### 6.  The Public Interest Favors Resolution In This Court

Delaware has a "local interest" in litigation initiated against its "corporate citizens" like TGL and LAGP. *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *14 (*citing Zazzali v. Swenson*, 852 F. Supp. 2d 438, 452 (D. Del. 2012)).

LAGP argues that "public interest resides in California" simply because LAGP is in California and the dispute involves TGL's use of the geographic designation "Los Angeles." That is not sufficient to establish a California public interest. LAGP wrongly relies on *Pennsylvania Mfrs. Indem. Co. v. Six Continents Hotels, Inc.*, 2023 U.S. Dist. LEXIS 197478 (D. Del. Nov. 2, 2023), an insurance coverage case in which nearly every factor favored dismissal:

> The dispute involves determining the scope of an Ohio company's insurance policy under somewhat unsettled Ohio law for injuries that occurred in Ohio and for which the victim is seeking redress in Ohio. Moreover, the Ohio company is a necessary and indispensable party that cannot be joined here for lack of personal jurisdiction.

*Id.* at \*25. Unlike *Pennsylvania Mfrs.*, this dispute concerns alleged trademark infringement nationwide and alleged infringing activity not limited to California. At best, this factor is neutral.

Overall, a balancing of the *Reifer* factors weigh against dismissal of this action.

## B. This Action Should Proceed in Delaware Rather Than Being Transferred to California

A movant seeking transfer bears the heavy burden "to establish that a balance of proper interests weigh[s] in favor of the transfer." *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883 at \*2 (D. Del. May 4, 2020) (*citing Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (Emphasis in original). "[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at \*5 (citation omitted).

In evaluating whether transfer is appropriate under 28 U.S.C. § 1404(a), the court weighs various public and private interests. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). There is no "definitive formula or list of the factors," but the Third Circuit articulates the following factors:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial

11

EXHIBIT 2
Page 22

condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.[10]

*Id. at* 879-880 (internal citations omitted).[11]

### 1.  TGL's Choice of Forum Is Paramount

In addressing a motion to transfer venue, "the plaintiff's choice of venue should not be lightly disturbed." *Id. at* 879 (citation omitted). TGL's choice of forum is paramount in this analysis. *See Cisco Sys. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 U.S. Dist. LEXIS 205905 at *11-12 (D. Del. Nov. 14, 2022) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.") (citation omitted); *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883 at *4 ("binding Third Circuit law compels me to treat Blackbird's forum choice as a paramount consideration in the § 1404(a) balancing analysis") (internal quotes omitted).

The "deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *6-7 (citation omitted). Here, TGL chose Delaware because both parties are incorporated in that state, making it a "legitimate venue." *American Axle & Mfg.*, 2016 U.S. Dist. 198332 at *7 ("It is well-settled that a party's state of incorporation is a traditional and legitimate

---

[10] The parties agree that the "enforceability of the judgment" interest is neutral.

[11] The analysis is "flexible" and "must be made on the unique facts of each case"; transfer is "not to be liberally granted." *Blackbird Tech LLC v. Cloudflare, Inc.*, 2017 U.S. Dist. LEXIS 167860 at *6 (D. Del. Oct. 11, 2017) (citations omitted).

12

EXHIBIT 2
Page 23

venue in which to bring suit.") (citation omitted). Delaware does not have to be TGL's "home turf" to be afforded deference. *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *7. TGL's choice is legitimate and, therefore, paramount.

LAGP suggests that "where a plaintiff's only connection to Delaware is its incorporation there, [this factor] weighs only minimally against transfer." Mot at 13 (internal quotes omitted). LAGP's cited cases do not support such a blanket rule:

- In *Memory Integrity, LLC v. Intel Corp.*, the plaintiff is a "non-practicing entity with no facilities, operations, employees, or presence in Delaware" so its choice of Delaware was given "increased weight," but not the "the full benefits of heightened deference as a result of its minimal connection to Delaware." 2015 U.S. Dist. LEXIS 17813, *6-7 (D. Del. Feb. 13, 2015).

- In *Blackbird Tech LLC v. Cloudfare, Inc.*, 2017 U.S. Dist. LEXIS 167860 (D. Del. Oct. 11, 2017), the court gave plaintiff's choice of forum less weight due to its questionable conduct in filing in Delaware. *Id*. at *15 ("almost immediately [after obtaining patent Blackbird] began a steady pattern of filing patent-infringement cases in the District of Delaware, raising some question as to its motivation for its Delaware incorporation.").

- In *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463 (D. Del. 2013), the plaintiffs' choice of forum of Delaware was afforded less weight because the "real party in interest" (*i.e.*, the "sole owner of the patents-in-suit") and "true plaintiff" was a Canadian company, not the Delaware corporation it joined as a co-plaintiff for jurisdiction. *Id*. at 469-470.[12]

LAGP's position is contrary to the law. For example, in *David & Lily Penn, Inc.*, the court denied the motion to transfer where the only factors supporting transfer were defendant's forum preference and the location of some operative events. Delaware was the plaintiff's forum choice, chosen "for legitimate reasons: it knew this Court could exercise personal jurisdiction over [defendant], a Delaware entity, and it was convenient to [plaintiff's] outside trademark counsel, whose principal office is located in Philadelphia." 2019 U.S. Dist. LEXIS 163785 at *7, *15. The plaintiff was incorporated and headquartered in Minnesota. None of the operative facts occurred in Delaware and the other *Jumara* factors were neutral.

---

[12] LAGP cites *One World Botanicals v. Gulf Coast Nutritionals*, 987 F. Supp. 317, 326 (D.N.J. 1997), but that court concluded that plaintiff's choice of forum "deserves deference."

13

EXHIBIT 2
Page 24

Accordingly, TGL's choice of forum deserves significant weight and LAGP fails to establish any other factors that diminish that weight.

### 2.  LAGP's Forum Preference Is Afforded Less Weight

LAGP has a strong preference to litigate in California because allegedly its headquarters, witnesses, and documents are there. The law, however, provides that its preferred forum "receive[s] less weight" than TGL's preference. *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *8 (*citing Zazzali v. Swenson*, 852 F. Supp. 2d 438, 449 (D. Del. 2012)).

In arguing that its choice of forum favors transfer, LAGP asserts, without citation, that LAGC is "based in Los Angeles, California, and drives a truck bearing the LAGC logo around Los Angeles and to golf events in California." Mot. at 14. LAGC does not have any physical offices in Los Angeles and its chief executive, Neal Hubman, resides in the San Francisco area, approximately 375 miles away from Los Angeles. Murvin Decl. at ¶ 11-12. LAGP's false allegations do not bolster the minimal weight given to this factor.

### 3.  The "Whether the Claim Arose Elsewhere" Interest Is Neutral

LAGP admits that the alleged broadcasting and advertising occurred nationwide and infringement "occurred on a national scale." Mot. at 15. That admission, regardless of the alleged "connection" to and "capitaliz[ation]" on California, establishes that this factor is neutral.

LAGP's wrongly relies on *Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, 2020 U.S. Dist. LEXIS 9944 (D. Del. Jan. 21, 2020), and *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012). In *Williamsburg*, for the patent infringement claims, the location of the design, development and manufacture was relevant, but for the Lanham Act claims and declaratory judgment, the location of the communications and statements between the parties and counsel was relevant. Here, following that guidance, the subject claims arose equally in

Florida, Pennsylvania and California because LAGP (in California) sent letters to TGL in Florida (Compl., Ex. E) and spoke to TGL's counsel whose office is in Pennsylvania.[13]

In *Intellectual Ventures*, the court ultimately denied the motion to transfer despite concluding that the location of the relevant events favored transfer:

> Overall, the following interests weigh against transfer: Plaintiff's choice of forum, practical considerations, and public policy. The following interests weigh in favor of transfer: Defendants' choice of forum, location of operative events, convenience of the parties, convenience to witnesses, and location of relevant evidence. Other factors are neutral. On the whole, then, recognizing the appropriate weight to be granted to each factor, the Court concludes that Defendants have failed to satisfy their burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer.

842 F. Supp. 2d at 760. Here, this interest is neutral and, therefore, does not support transfer.

### 4. The "Convenience of the Parties" Interest Is Neutral

This interest requires consideration of the "physical and financial condition" of the parties including the physical location of the parties, costs and logistics associated with any necessary travel, and the parties' ability to bear such costs. *See Jumara*, 55 F.3d at 879.

LAGP, as an entity incorporated in Delaware, must establish a "unique and unexpected burden" in litigating in Delaware to tip this factor in its favor. *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883 at *9 ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient.") (citation omitted).[14] LAGP fails to satisfy that burden. TGL's offices are in Florida. Traveling from Florida to Delaware is more convenient than California.

---

[13] In *Williamsburg*, both parties were headquartered in defendant's choice of forum. Here, the trademark owner, TGL, is not connected to California. Notably, the *Williamsburg* court confirmed the weight afforded plaintiff's forum choice regardless of ties to that forum: "I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere." 2020 U.S. Dist. LEXIS 9944 at *7.

[14] *See also VLSI Tech. LLC v. Intel Corp.*, 2018 U.S. Dist. LEXIS 184383 at *17 (D. Del. Oct. 29, 2018) ("As a Delaware corporation with global operations, Intel can demonstrate inconvenience for § 1404(a) purposes only if it prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations.") (internal quotes and citations omitted).

15

EXHIBIT 2
Page 26

LAGP also has not established that it lacks the necessary resources to litigate and, if necessary, travel to Delaware. Rather, while touting its national presence, LAGP emphasizes its financial strength. LAGP has not established its inconvenience and instead makes incorrect assumptions about TGL's convenience.

LAGP's wrongly relies on *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218 (D. Del. 2017), and *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 2013 U.S. Dist. LEXIS 30205 (D. Del. Mar. 6, 2013). In *MEC Resources*, neither party was incorporated or headquartered in Delaware. Here, both parties are incorporated in Delaware. LAGP asserts that the *ChriMar* court granted transfer "where plaintiff would be 'forced to bear travel costs no matter the court's decision, but proceeding in California would likely spare the defendants significant expense.'" Mot. at 16. Notably, however, following that excerpted quote from *ChriMar*, the court states:

> The weight accorded this factor is further reduced by the fact that the moving defendants are both incorporated in Delaware. [A] Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, inconvenient to defend its actions in the forum in which the corporation has freely chosen to create itself.

2013 U.S. Dist. LEXIS 30205 at *18 n. 5 ((internal quotes and citation omitted). LAGP's decision to incorporate in Delaware offsets any weight given to an interest in transferring the case.

LAGP is a Delaware corporation with sufficient financial resources to litigate in Delaware. *See David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *10 (defendant "failed to show how it, a nationwide company, would be unduly burdened by litigating in the district in which it is organized" and given it chose to incorporate in Delaware it "cannot complain once another corporation brings suit against it in Delaware"); *TSMC Tech., Inc.*, LLC, 2014 U.S. Dist. LEXIS 175201 at *44 ("it would [be] surprising if Zond, a Delaware LLC, argued [inconvenience]") (citation omitted). Accordingly, this interest is neutral and, therefore, does not support transfer.

16

EXHIBIT 2
Page 27

### 5. The "Convenience of the Witnesses" Interest Is Neutral

LAGP misunderstands this interest and, therefore, fails to establish it. This interest applies to (a) non-party witnesses who (b) "may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. LAGP identifies the witnesses as "principally the executives and employees of LA Golf, TGL, and the Golf Club." Mot. at 17. The parties are required to procure the trial attendance of their employees. *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883 at *10 ("[W]itnesses who are employed by a party carry no weight, because each party is able, indeed, obligated to procure the attendance of its own employees for trial.") (internal quotes and citation omitted); *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *11-12 (same). Accordingly, any inconvenience related to those employees has no bearing on this interest.

LAGP's blanket statement, without citation, that "every witness would have to travel a great distance and incur significant travel costs to testify at trial" (Mot. at 17) similarly fails to establish inconvenience. *VLSI Tech. LLC*, 2018 U.S. Dist. LEXIS 184383 at *18 ("[Movant] does not identify with particularity any potential witness outside its employ who would not be available for trial in Delaware. Because there is no record evidence that demonstrates that necessary witnesses will refuse to appear in Delaware for trial without a subpoena, the convenience of the witnesses factor is neutral."). This interest is neutral and, therefore, does not support transfer.

### 6. The "Location of Books and Records" Interest is Neutral

This interest applies if the books and records cannot be produced in Delaware (or are only available in California). *Jumara*, 55 F.3d at 879. LAGP simply asserts that its records are in California and "[b]ecause neither party has a presence in Delaware, neither party maintains books and records in Delaware." Mot. at 17. That is not the required showing. LAGP must establish that the parties' documents cannot be produced in Delaware regardless of where they are housed.

<div align="center">17</div>

EXHIBIT 2
Page 28

*Jumara*, 55 F.3d at 879; *VLSI Tech. LLC* , 2018 U.S. Dist. LEXIS 184383 at *19-20. LAGP has not met that burden.

In addition, with the advancements in technology, this interest receives minimal weight (at best). *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *12 ("[R]ecent technological advances have reduced the weight of this factor to virtually nothing.") (citation omitted); *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883 at *11 ("advances in technology [] have reduced the burdens associated with producing records in a distant district …") (citation omitted); *Smith Int'l, Inc. v. Baker Hughes, Inc.*, 2016 U.S. Dist. LEXIS 105481 at *12 (D. Del. Aug. 10, 2016) ("Today, virtually all businesses maintain their books and records in electronic format readily available for review and use at any location.") (citations omitted). This interest is neutral and, therefore, does not support transfer.

### 7. The "Practical Considerations" Interest is Neutral

This factor addresses "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. A trial in California may be easier and less expensive for LAGP, but not TGL. However, in *Blackbird Tech LLC v. Cloudflare, Inc.*, 2017 U.S. Dist. LEXIS 167860 at *29 (D. Del. Oct. 11, 2017) – a case relied on by LAGP – this Court explained this factor "focuses [on] the existence of related lawsuits in one of the fora at issue." There is no other related litigation in this District or the Central District of California so this factor "does not carry any weight in the present transfer analysis." 2017 U.S. Dist. LEXIS 167860 at *30.

### 8. The "Court Congestion" Interest At Best Slightly Favors Transfer

This factor analyzes the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. LAGP concludes that court congestion favors transfer because Central District of California had shorter median times from filing to (a) disposition [3.9 mos. v. 8.5 mos.] and (b) trial [29.1 mos. v. 32.2 mos.] of its civil cases. This slight difference is

not sufficient to favor transfer. *See Textron Innovations, Inc. v. Toro Co.*, 2005 U.S. Dist. LEXIS 23561 at *8 (D. Del. Oct. 14, 2005) ("court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer").

Even if this Court accepts LAGP's cases, those cases conclude that this factor weighs only "slightly" in favor of transfer when considering those median times. *See, e.g., Blackbird Tech. LLC v. TuffStuff Fitness Int'l, Inc.*, 2017 U.S. Dist. LEXIS 63752 at *15 (D. Del. Apr. 27, 2017).

### 9. The "Local Interest" Factor Is Neutral

This is a trademark dispute that implicates federal, not local, law. As a result, this factor does not favor transfer. Any perceived California interest "in the proper application of its laws to persons doing business within its jurisdiction" (Mot. at 18)[15] is balanced against Delaware's interest in suits against its corporate citizens (including suits involving state laws). *David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *14 ("Delaware has a local interest in lawsuits brought against its corporate citizens. That interest may be counterbalanced when, as here, the defendant is based in the proposed transferee District.") (internal quotes and citations omitted). This interest is neutral and, therefore, does not support transfer.

### 10. The "Public Policies of the Fora" Interest is Neutral

Contrary to LAGP's assertions, both parties assert claims under the fora laws. LAGP asserts claims for violations of California's Unfair Competition Law. TGL seeks a declaration that its marks "do[] not constitute unfair competition or deceptive trade practices under Delaware state law." Compl. at ¶ 1. At its core, the dispute involves trademark infringement which implicates federal law.

---

[15] LAGP cites *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481 (D.N.J. 1998), for this proposition, but that case was addressing New York's interest.

19

EXHIBIT 2

Page 30

Public policy in Delaware "encourages Delaware entities to resolve their disputes in Delaware courts." *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 U.S. Dist. LEXIS 77883 at *13. Because both parties are Delaware entities, this public policy is implicated. LAGP cites *Samsara Inc. v. Motive Techs., Inc.*, 2024 U.S. Dist. LEXIS 144602 (D. Del. Aug. 14, 2024), as finding "this factor was neutral where both parties were Delaware companies and the case raised 'key disputes under California law.'" *Samsara* also involved Delaware corporations, so the court concluded that "[b]ecause both fora have public policy interests, the Court finds that this factor is neutral." *Id*. at *17. Even accepting LAGP's position on the legal issues, based on the case law, this factor is neutral and does not support transfer.

### 11. "Familiarity of the Trial Judge With the Applicable State Law" is Inapplicable

This factor addresses the trial judges' familiarity with states laws "in diversity cases." *Jumara*, 55 F.3d at 879-80. This is not a diversity case, so this interest is inapplicable. If this Court is inclined to consider this factor, it is neutral because judges in both districts are equally capable of evaluating this trademark dispute. *See David & Lily Penn, Inc.*, 2019 U.S. Dist. LEXIS 163785 at *14-15. LAGP argues that California judges "are more likely to be familiar with the UCL [Unfair Competition Law]" (Mot. at 19) and because it has such a claim in its Action, this Action should be transferred. That is not sufficient. This interest is inapplicable or, at best, neutral. Therefore, it does not support transfer.

## IV.   CONCLUSION

LAGP fails to meet its heavy burden. The balance of factors does not support dismissal or favor transfer. This case should remain in Delaware. Accordingly, LAGP's Motion to Dismiss or Transfer should be denied in its entirety.

Dated: February 13, 2025    **FLASTER GREENBERG P.C.**

             */s/ Damien N. Tancredi*
             By: Damien Nicholas Tancredi (DE No. 5395)

20

EXHIBIT 2
Page 31

221 W. 10th Street, 4th Floor
Wilmington, DE 19801
Telephone: (302) 351-1910
Facsimile: (302) 351-1919
Damien.tancredi@flastergreenberg.com

Jordan A. LaVine (*admitted pro hac vice*)
Eric Clendening (*admitted pro hac vice*)
Laura Lipschutz (*admitted pro hac vice*)
1717 Arch Street, Suite 3300
Philadelphia, PA 19103

Telephone: (215) 279-9389
Facsimile: (215) 279-9394
Jordan.lavine@flastergreenberg.com
Eric.clendening@flastergreenberg.com
Laura.lipschutz@flastergreenberg.com

*Attorneys for Plaintiff TGL Holdings, LLC*

21

EXHIBIT 2
Page 32

## CERTIFICATE OF SERVICE

I, Damien N. Tancredi, hereby certify that on February 13, 2025, I electronically filed the foregoing Plaintiff TGL Golf Holdings, LLC's Response Brief in Opposition to Defendant LA Golf Partners, LLC's Motion to Dismiss or, Alternatively, Transfer Venue via the Court's CM/ECF system upon all counsel of record.

Dated: February 13, 2025                    **FLASTER GREENBERG P.C.**

                                            */s/ Damien N. Tancredi*
                                            Damien Nicholas Tancredi
                                            *Attorneys for Plaintiff TGL Holdings, LLC*

22

EXHIBIT 2
Page 33

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TGL GOLF HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-011 (JDW) |
| | ) | |
| LA GOLF PARTNERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT LA GOLF PARTNERS, LLC'S
MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER VENUE**

<div style="margin-left:50%">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
began@morrisnichols.com
esteingraber@morrisnichols.com

*Attorneys for Defendant LA Golf Partners,
LLC*

</div>

OF COUNSEL:

John C. Ulin
Benjamin W. Clements
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, CA 90067
(310) 553-4441

February 20, 2025

EXHIBIT 3
Page 34

TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................... 1

II. ARGUMENT .................................................................................. 1

    A. The Court Should Dismiss the Action .................................. 1

    B. Alternatively, the Court Should Transfer This Case to the Central District of California .......................................................... 7

III. CONCLUSION ............................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
    10 F.3d 425 (7th Cir. 1993) ..................................................................4

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    2016 WL 8677211 (D. Del. Sept. 23, 2016) ...................................5, 7

*Blackbird Tech LLC v. E.L.F. Beauty, Inc.*,
    2020 WL 2113528 (D. Del. May 4, 2020) .......................................7

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
    2017 WL 1536394 (D. Del. Apr. 27, 2017) ....................................10

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .......................................................3

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
    2013 WL 828220 (D. Del. Mar. 6, 2013) .......................................9

*Cisco Systems, Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
    2022 WL 16921988 (D. Del. Nov. 14, 2022) ................................7, 8

*Commc'ns Test Design, Inc. v. Contec LLC*,
    367 F. Supp. 3d 350 (E.D. Pa. 2019) .............................................6

*David & Lily Penn, Inc. v. TruckPro, LLC*,
    2019 WL 4671158 (D. Del. Sept. 15, 2019) ...........................5, 6, 7, 8

*Dermansky v. Young Turks, Inc.*,
    2023 WL 4351340 (D. Del. July 5, 2023) ....................................9, 10

*DigiTrax Entm't, LLC v. Universal Music Corp.*,
    21 F. Supp. 3d 917 (E.D. Tenn. 2014) ...........................................5

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am.*,
    350 F. Supp. 2d 620 (E.D. Pa. 2004) .............................................4

*E.E.O.C. v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988) .........................................................2

*Envirometrics Software, Inc. v. Georgia-Pac. Corp.*,
    1997 WL 699328 (D. Del. Nov. 4, 1997) ......................................2

*Intellectual Ventures I LLC v. Altera Corp.*,
    842 F. Supp. 2d 744 (D. Del. 2012) .............................................8, 9

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001)..................................................................................3

*Ithaca Ventures k.s. v. Nintendo of Am. Inc.*,
   2014 WL 4829027 (D. Del. Sept. 25, 2014).......................................................10

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)................................................................................7, 8

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   2013 WL 105323 (D. Del. Jan. 7, 2013).............................................................9

*MEC Res., LLC v. Apple, Inc.*,
   269 F. Supp. 3d 218 (D. Del. 2017)................................................................9, 10

*Mitel Networks Corp. v. Facebook, Inc.*,
   943 F. Supp. 2d 463 (D. Del. 2013)................................................................8, 9

*Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.*,
   1997 WL 700496 (E.D. Pa. Oct. 29, 1997)......................................................3, 4

*Nexans Inc. v. Belden Inc.*,
   966 F. Supp. 2d 396 (D. Del. 2013)...................................................................2

*Reifer v. Westport Ins. Corp.*,
   751 F.3d 129 (3d Cir. 2014)...............................................................................2

*Serco Servs. Co. v. Kelley Co.*,
   51 F.3d 1037 (Fed. Cir. 1995)............................................................................6

*Smith Int'l, Inc. v. Baker Hughes Inc.*,
   2016 WL 4251575 (D. Del. Aug. 10, 2016)........................................................5

*Solomon v. Cont'l Am. Life Ins. Co.*,
   472 F.2d 1043 (3d Cir. 1973).............................................................................5

*Tempco Elec. Heater Corp. v. Omega Eng'g*,
   819 F.2d 746 (7th Cir. 1987).............................................................................5

*Tischio v. Bontex, Inc.*,
   16 F. Supp. 2d 511 (D.N.J. 1998).....................................................................10

*Unlimited Tech., Inc. v. Leighton*,
   266 F. Supp. 3d 787 (E.D. Pa. 2017)................................................................2

*Williamsburg Furniture, Inc. v. Lippert Components, Inc.*,
   2020 WL 331119 (D. Del. Jan. 21, 2020)...........................................................8

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..................................................................................................2

**Federal Statutes**

28 U.S.C. § 1404(a) ..................................................................................................7

## I.     __INTRODUCTION__

In an effort to keep this case in Delaware, where none of the facts occurred and none of the parties or witnesses are located, TGL goes so far as to claim that its "Los Angeles Golf Club" is "connecte[ed] to Los Angeles in name only." (Opp. at. 2.) That's a bold position for a false advertising and unfair competition defendant that openly markets a Los Angeles team and promoted its launch by telling consumers that LA "is the perfect home for our TGL team" and "the perfect place for TGL to kick things off." (Compl., Ex. A, pp. 20-21.) TGL also relies heavily on the arguments that Delaware is a proper forum for its declaratory action and there was no pending litigation when it filed this action. Neither point makes the Declaratory Judgment Act the proper vehicle for resolving LA Golf's claims. And neither outweighs the practical considerations that counsel in favor of litigating this dispute in California. TGL tries to fault LA Golf for seeking a resolution without litigation, but the argument ignores case law encouraging parties to resolve their disputes and the reality that a trademark owner is entitled to assess the commercial impact and progressive encroachment that another market participant's activities have on its rights – especially where TGL delayed its inaugural season by a year and its early ratings have declined quickly over its first few weeks.[1] In any case, LA Golf has now filed the threatened California Action. The Court should therefore dismiss this action or transfer it to the Central District of California.

## II.     __ARGUMENT__

### A.     **The Court Should Dismiss the Action**

TGL does not dispute that "considerations of practicality and wise judicial administration" inform this Court's assessment of whether to exercise jurisdiction under the Declaratory Judgment

---

[1] *See* Abhiji Raj, *Woods, McIlroy Told TGL Format Needs to Change as PGA Tour Pro Addresses Decline in Ratings*, Essentially Sports (Feb. 17, 2025, 5:43 PM PST), https://www.essentiallysports.com/golf-news-tiger-woods-rory-mcilroy-told-tgl-format-needs-to-change-as-pga-tour-pro-addresses-ratings-decline.

Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Nor does TGL dispute that the Court should consider the *Reifer* factors addressed by the motion. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014). As set forth below, TGL fails to refute that those factors favor dismissal.

**TGL raced to the courthouse.** TGL does not dispute that the Third Circuit follows the essentially ubiquitous rule that litigants may not use a declaratory action as a method of procedural fencing in a race to the courthouse. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976–77 (3d Cir. 1988). Nor does TGL even address the Third Circuit's pronouncement that the "timing" of a declaratory action may "indicate[ ] an attempt to preempt" a threatened lawsuit. *Id.* at 977; *see also Envirometrics Software, Inc. v. Georgia-Pac. Corp.*, 1997 WL 699328, at *4 (D. Del. Nov. 4, 1997); *Unlimited Tech., Inc. v. Leighton*, 266 F. Supp. 3d 787, 795 (E.D. Pa. 2017).

Unable to refute Third Circuit law, TGL cites *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396 (D. Del. 2013), to argue that "a suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Id.* at 404.[2] But in *Nexans*, the Court found that the declaratory action was not anticipatory because "there [was] no evidence of record that Nexans had received any concrete indications of an imminent lawsuit." *Id.*

By contrast, TGL filed suit one business day after receiving LA Golf's January 3, 2025 letter. That letter was "a final demand to cease and desist" and threatened "potential litigation." (Compl., Ex. F.) Why did TGL file suit on January 6, 2025 in a dispute of which it had been aware since at least October 2023 if not because of this letter? TGL does not say.[3] Instead, TGL twists

---

[2]  In a footnote, TGL argues that LA Golf did not address the first-filed rule until Page 13 of its opening brief. (Opp. at 5 n.3.) TGL ignores that nearly every case cited on Page 8 of that brief involved a court expressly or impliedly refusing to apply the first-filed rule. (*See* Mot. at 8.)

[3]  Contrary to TGL's argument (Opp. at 5 n.5), forum shopping is not limited to the circumstance where there is a "conflict in law" between the two fora but may involve perceived advantages or

itself into a pretzel (Opp. at 6 n.7) to avoid its own allegation that LA Golf "threatened to bring a lawsuit." (Compl. ¶ 50.) Indeed, TGL alleges that LA Golf's "threat of litigation . . . has left a cloud hanging over TGL and its business." (*Id.* ¶ 52.) These allegations confirm that LA Golf's threat of litigation prompted this declaratory action.

TGL's remaining argument is that this action was not procedural fencing because the parties were not "actively negotiating a settlement or resolution of their disagreement" when TGL filed suit. (Opp. at 5.) TGL cites no authority for this argument. Regardless, TGL can make this argument only because it raced to the courthouse rather than respond to LA Golf's letter. The upshot of TGL's argument is that LA Golf should have raced to the courthouse (like TGL) to file a lawsuit rather than taking a measured approach to assess the harm that TGL's activities have caused. The law entitles a trademark owner to assess the commercial impact and progressive encroachment that another market participant's activities have on the owner's rights. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999) ("[H]ad defendant's encroachment been minimal, or its growth slow and steady, there would be no laches."). Moreover, courts encourage litigants to engage in dialogue and negotiations rather than rushing to the courthouse. *E.g.*, *Nat'l Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 WL 700496, at *9 (E.D. Pa. Oct. 29, 1997) ("Permitting this case to go forward would discourage similar efforts at informal resolutions[.]"). This factor favors dismissal.

**Dismissal avoids duplicative litigation.** Knowing the California Action will resolve this dispute, TGL suggests that LA Golf filed the California Action in a cynical attempt to "tip this factor in its favor." (Opp. at 7.) Not so. LA Golf filed the California Action because LA Golf is the natural plaintiff. Nowhere does TGL even argue that the Central District of California is an

---

disadvantages and the inconvenience and expense to an adversary from litigating in one of the fora. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

inappropriate forum. Instead, TGL quibbles about some of the facts of the *National Foam* and *Drugstore-Direct* cases. (Opp. at 8.) But given TGL's concession that "'conserving judicial resources' and ensuring a 'comprehensive resolution of litigation' are key factors" for this Court to consider (*id.*), TGL cannot refute that those cases support dismissal of this preemptive declaratory action. *See Nat'l Foam*, 1997 WL 700496, at *9; *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am.*, 350 F. Supp. 2d 620, 624 (E.D. Pa. 2004). This factor favors dismissal.

**LA Golf is pursuing more efficient remedies in the California Action.** In the motion, LA Golf showed that declaratory actions do not serve a useful purpose where there is a pending action by the natural plaintiff that seeks coercive remedies like monetary damages or injunctive relief. (Mot. at 10.) TGL argues that LA Golf cites "factually dissimilar" cases to support this argument but does not explain how the trademark and copyright infringement cases that LA Golf cites are factually dissimilar. (Opp. at 8.) TGL also argues that no coercive action existed when TGL filed suit, but, again, TGL can make this argument only because it raced to the courthouse. As discussed above, LA Golf was entitled to assess the harm that TGL's activities caused and acted reasonably in seeking to reach a resolution before filing suit. This factor favors dismissal.

**TGL's requested declaration will not resolve the dispute.** In its opposition, TGL concedes its requested declaration will not resolve the parties' dispute but argues that this defect can be "cured" if LA Golf brings counterclaims in this case and adds LAGC, the other defendant in the California Action. (Opp. at 9.) This argument simply confirms that TGL raced to the courthouse. The California Action should be allowed to proceed. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) ("[A] suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way."). This factor favors dismissal.

**Delaware is not a convenient forum.** Rather than address whether Delaware is a convenient forum, TGL cites cases holding that Delaware is a "legitimate" or "logical" venue because the parties are organized under Delaware law (Opp. at 9-10). *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 2016 WL 8677211, at *3 (D. Del. Sept. 23, 2016); *Smith Int'l, Inc. v. Baker Hughes Inc.*, 2016 WL 4251575, at *3 (D. Del. Aug. 10, 2016), *report and recommendation adopted by* 2016 WL 6122927 (D. Del. Oct. 19, 2016). However, LA Golf did not argue that Delaware was an "improper" or "illogical" venue.[4] Whether TGL chose a "logical" forum is beside the point. *See DigiTrax Entm't, LLC v. Universal Music Corp.*, 21 F. Supp. 3d 917, 924 (E.D. Tenn. 2014) ("Whether the forum chosen by the declaratory plaintiff is 'logical' can have only a minimal value in determining whether procedural fencing has occurred."); *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 749–50 (7th Cir. 1987) ("[T]he mere fact that Tempco filed its declaratory judgment action first does not give it a 'right' to choose a forum.").[5]

As the motion showed, LA Golf's offices, employees, business records, production facility, and entertainment venue are in California; it has no operations or presence in Delaware; and it will incur significant costs if forced to litigate in Delaware. (Declaration of Reed Dickens ¶¶ 2-11.) TGL also has no physical presence in Delaware; its offices and sports arena are in Florida; LAGC's owners are in Florida; and LAGC's chief executive is in San Francisco. (Declaration of Chris

---

[4] TGL cites *David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 WL 4671158, at *3 (D. Del. Sept. 15, 2019) to argue that the location of outside counsel is a "legitimate" reason for selecting Delaware. (Opp. at 10.) However, the *David & Lily Penn* court did not assess this consideration in the context of a motion to dismiss under *Reifer*. Regardless, as the motion showed, the Third Circuit has held that "[t]he convenience of counsel is not a factor to be considered" in the transfer analysis. *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973).

[5] TGL appears to argue that LA Golf acknowledged that Delaware was a convenient forum when it stated in the January 3, 2025 letter that it was willing to defend its trademarks "in the United States and throughout the world" and "is prepared to continue to spend what it takes in each of these jurisdictions to protect its rights." (Opp. at 9-10.) LA Golf's willingness to defend its rights does not transform Delaware into a convenient forum.

Murvin ¶¶ 6, 8, 11.) TGL does not address the authority holding that, in these circumstances, this factor favors dismissal. *See Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995); *Commc'ns Test Design, Inc. v. Contec LLC*, 367 F. Supp. 3d 350, 359 (E.D. Pa. 2019).

**The public interest favors California.** TGL cites *David & Lily Penn*, 2019 WL 4671158, at *5, to argue that "Delaware has a local interest in lawsuits brought against its corporate citizens." (Opp. at 10.) Setting aside the fact that *David & Lily Penn* did not concern a motion to dismiss under *Reifer*, TGL omits the next sentence of that opinion, which states: "That interest may be 'counterbalanced' when, as here, the defendant is based in the proposed transferee District." *David & Lily Penn*, 2019 WL 4671158, at *5. According to TGL's own authority, because LA Golf is in California, Delaware's interest is offset by California's interest.

TGL does not refute that the public interest in resolving this dispute favors California because it concerns trademarks that use the name "Los Angeles" and the abbreviation "LA." (Mot. at 12.) When TGL announced the "Los Angeles Golf Club" as its inaugural team, it traded on the city's "star power." (Compl., Ex. A, pp. 20-21 of 34.) It identified one of LAGC's owners, Alexis Ohanian, as an owner of Los Angeles-based NWSL team Angel City FC and promoted his statement that: "Los Angeles is the perfect home for our TGL team. This city embodies the intersection of sports, technology, and entertainment, making it an ideal backdrop for the innovation and excitement we aim to bring to the world of golf and its fans." (*Id.*, Ex., A, p. 20 of 34.) TGL stated that LAGC was "the newest addition to the LA sports scene" and was intended to become "a golf club representative of the city it calls home." (*Id.*)

Given these advertisements, LA Golf is surprised to see TGL now try to downplay LAGC's connection to the city it "calls home." TGL states that LAGC's "connection to Los Angeles is in name only." (Opp. at 2.) It states that none of LAGC's players are "Los Angeles residents."

(Murvin Decl. ¶ 10.) Even if technically true, these statements are misleading. In addition to the advertisements discussed above, two of the four players on the team—Collin Morikawa and Sahith Theegala—are from Los Angeles County and Orange County, respectively. TGL actively promotes Morikawa and Theegala's ties to Los Angeles,[6] and undoubtedly chose them to be part of the "Los Angeles Golf Club," as opposed to one of TGL's other teams, because of those connections. This factor favors dismissal.

### B. Alternatively, the Court Should Transfer This Case to the Central District of California

Were the Court to go further, TGL does not dispute that the Court should consider the *Jumara* factors under 28 U.S.C. § 1404(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995). As set forth below, TGL fails to refute that those factors favor transfer.

**<u>TGL's choice of forum deserves minimal weight.</u>** TGL argues that its choice of venue is "paramount" because it is the plaintiff. (Opp. at 12-13.) But as the motion showed, the first-filed rule does not apply because TGL filed this declaratory action to win a race to the courthouse. (Mot. at 13-14.) TGL's own authority supports this argument. In *Cisco Systems, Inc. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 WL 16921988 (D. Del. Nov. 14, 2022), the Court held that the plaintiffs' choice "would not dominate the balancing to the same extent as it otherwise might" because they "abused the Declaratory Judgment Act by running to the courthouse" and had no connection to Delaware other than their incorporation there and decision to sue there. *Id.* at *5, 6.[7] While the *Cisco Systems* Court denied the defendant's motion to transfer, primarily because the defendant had no connection to the transferee forum and filed a separate lawsuit against one of the plaintiffs in

---

[6] *See* https://tglgolf.com/players/sahith-theegala; https://tglgolf.com/players/collin-morikawa.

[7] None of TGL's other cases involved a party racing to the courthouse. *See Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 WL 2113528, at *2-3 (D. Del. May 4, 2020); *Am. Axle*, 2016 WL 8677211, at *3-4; *David & Lily Penn*, 2019 WL 4671158, at *2-3.

EXHIBIT 3

Page 45

Delaware (by contrast, LA Golf is based in California and has not filed suit in Delaware), *id.* at *6, 7, the case is consistent with the cases that LA Golf cited, where the courts afforded the plaintiffs' choice less weight because they had minimal contacts with Delaware. (Mot. at 13.) This factor merits minimal weight.

**LA Golf's choice of forum favors transfer.** TGL does not dispute that this factor favors transfer. (Opp. at 14.) Although TGL argues that LA Golf's choice of forum deserves "less weight" than TGL's choice, as discussed above the case that TGL cites did not involve a declaratory plaintiff who raced to the courthouse. *See David & Lily Penn*, 2019 WL 4671158, at *3.

**Where the claims arose favors transfer.** TGL does not refute that this factor favors transfer "[i]f there are significant connections between [the transferee venue] and the events that gave rise to a suit." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012); *see also Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, 2020 WL 331119, at *4 (D. Del. Jan. 21, 2020) ("Given that at least some of the asserted claims arose in whole or in part in the Northern District [of Indiana] and no claims arose in Delaware, this factor favors transfer."). Although TGL tries to downplay Los Angeles's connection to the dispute (Opp. at 14-15), as the motion showed, TGL sought to trade on the city's "star power" and "sports scene" in its advertisements, and the dispute itself concerns TGL's use of the name "Los Angeles Golf Club." (Mot. at 15.) And again, TGL promotes the fact that two of LAGC's four players hail from southern California. This factor favors transfer.

**The convenience of the parties and witnesses favors transfer.** The parties' locations and relative financial conditions favor transfer. *See Jumara*, 55 F.3d at 879; *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 471 (D. Del. 2013). LA Golf is in California and will incur significant costs if forced to litigate in Delaware. (Dickens Decl. ¶¶ 2-11.) LAGC's chief executive

is also in California. (Murvin Decl. ¶ 11.) TGL does not deny that it can bear the expense of litigating in California. (*See* Mot. at 16.) In these circumstances, this factor favors transfer. *See ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013) (this factor favored transfer where plaintiff was "forced to bear travel costs no matter the court's decision, but proceeding in California will likely spare the defendants significant expense").

Unable to refute the facts, TGL argues that because LA Golf is a Delaware company, LA Golf must show that litigating in Delaware would create a "unique and unexpected burden." (Opp. at 15.) But as courts have held, the fact that LA Golf is headquartered in California and has no ties to Delaware often constitutes an "unexpected burden." *E.g.*, *Linex Techs., Inc. v. Hewlett-Packard Co.*, 2013 WL 105323, at *5 n.5 (D. Del. Jan. 7, 2013) (finding "the necessary 'unexpected burden'" where one of the defendants was incorporated in California with no ties to Delaware and the other defendants were Delaware corporations but "headquartered in California"); *see also Intellectual Ventures*, 842 F. Supp. 2d at 755-56 (finding that this factor favored transfer even though all the defendants were Delaware corporations). This factor favors transfer.

**The location of books and records favors transfer.** TGL does not refute that this factor favors transfer where the relevant documents are not located in Delaware, even if technological advances may facilitate the transfer and production of those materials. *E.g.*, *Mitel*, 943 F. Supp. 2d at 474; *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226-27 (D. Del. 2017); *Dermansky v. Young Turks, Inc.*, 2023 WL 4351340, at *4 (D. Del. July 5, 2023). This factor favors transfer. (Dickens Decl. ¶¶ 8, 10; Murvin Decl. ¶ 6.)

**Practical considerations favor transfer.** TGL argues that this factor asks whether there are related lawsuits in the transferee forum. (Opp. at 18.) TGL ignores that LA Golf has now filed the California Action. *See Mitel*, 943 F. Supp. 2d at 475-76 (this factor favored transfer where,

*inter alia*, Facebook sued Mitel in California five months after Mitel sued Facebook in Delaware). TGL also ignores the authority holding that this factor favors transfer if a transfer would increase efficiency and decrease inconvenience and expense. *MEC*, 269 F. Supp. 3d at 227; *Dermansky*, 2023 WL 4351340, at *4. This factor favors transfer.

**Court congestion favors transfer.** TGL does not dispute that the Central District of California has shorter median times from filing to disposition and trial, and it offers no reason to depart from the cases cited in the motion (Opp. at 18-19). *See Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, 2017 WL 1536394, at *6 (D. Del. Apr. 27, 2017); *Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, 2014 WL 4829027, at *6 (D. Del. Sept. 25, 2014). This factor favors transfer.

**The local interest favors transfer.** TGL admits that the interest Delaware has in lawsuits brought against its corporate citizens is offset by the fact that LA Golf is headquartered in California. (Opp. at 19). TGL does not refute that California has a particularly relevant interest given that TGL seeks to trade on California's reputation as "'one of the entertainment capitals of the world.'" *Dermansky*, 2023 WL 4351340, at *5; *cf. Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 526 (D.N.J. 1998) (New Jersey jurors should not have to adjudicate a dispute occurring "almost exclusively outside the State of New Jersey."). This factor favors transfer.

**The public policies of the fora and local law favor transfer.** Unable to refute that LA Golf has filed claims under California law in the California Action, TGL argues that it filed a declaratory relief claim concerning Delaware law. (Opp. at 19.) But given that LA Golf is not suing for a violation of Delaware law, it is unclear why TGL needs such a declaration. If anything, this argument is one more indication TGL raced to the courthouse. These factors favor transfer.

## III.   CONCLUSION

For the foregoing reasons, LA Golf respectfully requests that the Court dismiss this case or, alternatively, transfer it to the Central District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)
E. Paul Steingraber (#7459)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
began@morrisnichols.com
esteingraber@morrisnichols.com

OF COUNSEL:

John C. Ulin
Benjamin W. Clements
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, CA  90067
(310) 553-4441

*Attorneys for Defendant LA Golf Partners, LLC*

February 20, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2025, upon the following in the manner indicated:

Damien Nicholas Tancredi, Esquire                           *VIA ELECTRONIC MAIL*
FLASTER GREENBERG P.C.
221 Wes. 10th Street, 4th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Eric R. Clendening, Esquire                                 *VIA ELECTRONIC MAIL*
Jordan A. LaVine, Esquire
Laura Lipschutz, Esquire
FLASTER GREENBERG P.C.
100 Front Street, Suite 100
Conshokocken, PA  19428
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)

EXHIBIT 3
Page 50

# **<u>EXHIBIT 4</u>**

| From: | Nary Kim |
|---|---|
| To: | Ulin, John C.; LaVine, Jordan; Clements, Benjamin W. |
| Cc: | Katz, Jennifer D.; Zachary Glasser |
| Subject: | RE: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al |
| Date: | Wednesday, March 26, 2025 11:17:00 AM |
| Attachments: | image001.png |
| | image005.png |

Hi John and Ben,

If the Stipulation remains un-entered today, we are planning to file a very short, anodyne motion to stay/dismiss this action pending resolution of the Transfer Motion by the Delaware Court. We'll plan to file it later in the evening, in case the Stipulation is entered at some point this afternoon.

Thanks,

Nary

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Tuesday, March 25, 2025 11:25 AM
**To:** Nary Kim <nkim@kbkfirm.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg>; Zachary Glasser <zglasser@kbkfirm.com>
**Subject:** Re: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

**External Source.**

Thanks for the note. No objection from our side.

JU

**From:** Nary Kim <nkim@kbkfirm.com>
**Sent:** Tuesday, March 25, 2025 8:31:34 AM
**To:** Ulin, John C. <JUlin@troygould.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg>; Zachary Glasser <zglasser@kbkfirm.com>
**Subject:** RE: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

All,

As the Court has not yet signed off on the Proposed Order accompanying this stipulation, we're planning to email the clerk later today (copying all counsel) to inquire about its status.

Thanks,

Nary

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Friday, March 21, 2025 7:25 AM
**To:** Nary Kim <nkim@kbkfirm.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg>; Zachary Glasser <zglasser@kbkfirm.com>
**Subject:** Re: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

**External Source.**

Nary, we will agree to a stipulation or unopposed motion in the CD Cal. case, so long as your clients agree that they will not use the stipulation or the extended time for response to support any argument about delay by LA Golf in enforcing our rights or any other substantive issue in the case, regardless of where it is ultimately litigated. I am on an airplane. If I cannot review a draft that you circulate, Ben Clements will review and get back to you. Thanks.

EXHIBIT 4
Page 51

JU

---

**From:** Nary Kim <nkim@kbkfirm.com>
**Sent:** Thursday, March 20, 2025 2:22 PM
**To:** Ulin, John C. <JUlin@troygould.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>; Zachary Glasser <zglasser@kbkfirm.com>
**Subject:** RE: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

Hi John,

Thanks for hopping on the Zoom with us yesterday.  You had indicated that you would try to connect with your client by today, to let us know if we could file a Stipulation, as discussed.

Optimistically, we're circulating a draft of the Stipulation we'd want to get on file, either today or tomorrow.  Once you've had a chance to review it with your client, please let us know if you have any edits/comments.

Many thanks,

Nary

---

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Wednesday, March 19, 2025 11:00 AM
**To:** Nary Kim <nkim@kbkfirm.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** Re: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

External Source.

Thank you. Talk with you then.

Get Outlook for iOS

---

**From:** Nary Kim <nkim@kbkfirm.com>
**Sent:** Wednesday, March 19, 2025 10:58:25 AM
**To:** Ulin, John C. <JUlin@troygould.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** RE: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

No problem – 2:15 pm works for me.  I'll update the calendar invite.

---

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Wednesday, March 19, 2025 10:57 AM
**To:** Nary Kim <nkim@kbkfirm.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** Re: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

External Source.

With apologies, I am now tied up from 1-2 pm. I could talk at 12:45 or 2:15 p.m.  Would either of those times work?

Get Outlook for iOS

---

EXHIBIT 4
Page 52

**From:** Nary Kim <nkim@kbkfirm.com>
**Sent:** Tuesday, March 18, 2025 3:02:51 PM
**To:** Ulin, John C. <JUlin@troygould.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** RE: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

Great – let's do 1 pm (PT) if that works for everyone else.

---

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Tuesday, March 18, 2025 2:53 PM
**To:** Nary Kim <nkim@kbkfirm.com>; LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** Re: LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

<mark>External Source.</mark>

Sorry to keep you waiting on a response. I can talk tomorrow at 10:00 am or 1:00 pm. Thank you.

JU

---

**From:** Nary Kim <nkim@kbkfirm.com>
**Sent:** Monday, March 17, 2025 5:03 PM
**To:** LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Ulin, John C. <JUlin@troygould.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** LA Golf Partners, LLC v. TGL Golf Holdings, LLC et al

> You don't often get email from nkim@kbkfirm.com. Learn why this is important

Hi John and Ben –

Following up on the below email about scheduling a meet-and-confer. Please let us know if there's a time that works for you on March 19, or if you'd like to propose alternative windows.

Thanks much,

Nary

---

**From:** Nary Kim
**Sent:** Monday, March 17, 2025 9:41 AM
**To:** LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Ulin, John C. <JUlin@troygould.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** RE: Rescheduling Our Call

Hi John –

We're writing to ask about your availability to meet-and-confer with us about a proposed motion to stay or dismiss the later-filed C.D. Cal. action, pending resolution of the motion practice in Delaware. We're available on March 19 at the following times:

- 10 am (PT) to 11 am (PT); and
- 12 noon (PT) to 4 pm (PT)

Let us know if there is a time in either of those windows that would work for you.

Thanks,

EXHIBIT 4
Page 53

Nary

---

**From:** LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>
**Sent:** Tuesday, February 25, 2025 2:00 PM
**To:** Ulin, John C. <JUlin@troygould.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>; Nary Kim <nkim@kbkfirm.com>
**Subject:** RE: Rescheduling Our Call

**External Source.**

John:

Those terms are acceptable.  We will prepare an appropriate stipulation for filing. I am including our California local counsel on this email.

On the topic of an amicable resolution, let me know when you want to reconnect. I have a bit to add to our last conversation as well.

Thanks
Jordan

**Jordan LaVine**
Co-Managing Shareholder • Flaster Greenberg PC
p: 215.279.9389 • f: 215.279.9394 • c: 610.329.8034 •e: Jordan.LaVine@flastergreenberg.com

---

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Tuesday, February 25, 2025 4:48 PM
**To:** LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** Re: Rescheduling Our Call

Jordan —

LA Golf will agree not to oppose your request for an extension of time to respond to our CDCA Complaint against TGL and Los Angeles Golf Club pending the resolution of our Motion to Dismiss or Transfer in D. Delaware, provided that your clients agree that you will not: (a) argue that the extension supports your position on the Delaware Motion or otherwise refer to it at oral argument on that motion (if your request for oral argument is granted); or (b) refer to our agreement not to oppose an extension request as part of an argument that we unreasonably delayed seeking relief against your clients. Please confirm whether that is acceptable.

In the meantime, I would also like to continue my conversation with you about an amicable resolution and have a few thoughts to share that we did not discuss on our last call.  Thank you.

JU

---

**From:** LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>
**Sent:** Tuesday, February 25, 2025 12:00:52 PM
**To:** Ulin, John C. <JUlin@troygould.com>; Clements, Benjamin W. <bclements@troygould.com>
**Cc:** Katz, Jennifer D. <jennifer.katz@flastergreenberg.com>
**Subject:** RE: Rescheduling Our Call

John, Ben – following up on my email of earlier today and now including Ben in the event that John is away (no auto-reply was received).

We are seeking to meet and confer regarding an extension of time to respond in the California matter.  In the absence of a response from you, we will proceed with a motion and just note your non-response.

Thank you.
Jordan

**Jordan LaVine**
Co-Managing Shareholder • Flaster Greenberg PC

EXHIBIT 4
Page 54

p: 215.279.9389 • f: 215.279.9394 • c: 610.329.8034 •e: Jordan.LaVine@flastergreenberg.com

---

**From:** LaVine, Jordan
**Sent:** Tuesday, February 25, 2025 10:44 AM
**To:** 'Ulin, John C.' <JUlin@troygould.com>
**Subject:** RE: Rescheduling Our Call

John – Please advise today if you agree to an extension of time in the California matter pending the outcome of your motion in Delaware.

Thank you.
Jordan

### Jordan LaVine
Co-Managing Shareholder • Flaster Greenberg PC
p: 215.279.9389 • f: 215.279.9394 • c: 610.329.8034 •e: Jordan.LaVine@flastergreenberg.com

---

**From:** LaVine, Jordan
**Sent:** Wednesday, February 19, 2025 12:56 PM
**To:** Ulin, John C. <JUlin@troygould.com>
**Subject:** RE: Rescheduling Our Call

John – that's fine. I don't have much to report anyway.  I may have more in a few days, so let me know what works for you.

 **Jordan LaVine**
Co-Managing Shareholder • Flaster Greenberg PC
p: 215.279.9389 • c: 610.329.8034 • f: 215.279.9394 • e: Jordan.LaVine@flastergreenberg.com
One Tower Bridge, 100 Front Street, Suite 100, Conshohocken, PA 19428
alternate office: 1717 Arch Street, Suite 3300, Philadelphia, PA 19103
alternate office: 295 Madison Avenue, 12th Floor, New York, NY 10017

 

Register for our Business Law Seminars here.

NOTICE: This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling the sender, so that our address record can be corrected.

---

**From:** Ulin, John C. <JUlin@troygould.com>
**Sent:** Wednesday, February 19, 2025 12:51 PM
**To:** LaVine, Jordan <Jordan.LaVine@flastergreenberg.com>
**Subject:** Rescheduling Our Call

Good morning.  With apologies for the inconvenience,  I must attend to another matter this morning and need to push our call about possible parameters for amicable resolution to a different day.  I will get back to you with a few available times. Thanks.

JU

EXHIBIT 4
Page 55